FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 29, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROY C.,[1] | No. 1:19-cv-03249-MKD |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 14, 15 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

motion, ECF No. 14, and denies Defendant's motion, ECF No. 15.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

1    rational interpretation, [the court] must uphold the ALJ's findings if they are

2    supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

3    F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

4    ALJ's decision on account of an error that is harmless." *Id.* An error is harmless

5    "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

6    *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's

7    decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

8    *Sanders*, 556 U.S. 396, 409-10 (2009).

9                          **FIVE-STEP EVALUATION PROCESS**

10            A claimant must satisfy two conditions to be considered "disabled" within

11    the meaning of the Social Security Act. First, the claimant must be "unable to

12    engage in any substantial gainful activity by reason of any medically determinable

13    physical or mental impairment which can be expected to result in death or which

14    has lasted or can be expected to last for a continuous period of not less than twelve

15    months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's

16    impairment must be "of such severity that he is not only unable to do his previous

17    work[,] but cannot, considering his age, education, and work experience, engage in

18    any other kind of substantial gainful work which exists in the national economy."

19    42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

20

ORDER - 3

The Commissioner has established a five-step sequential analysis to
determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §§
404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner
considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i),
416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the
Commissioner must find that the claimant is not disabled.  20 C.F.R. §§
404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis
proceeds to step two.  At this step, the Commissioner considers the severity of the
claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the
claimant suffers from "any impairment or combination of impairments which
significantly limits [his or her] physical or mental ability to do basic work
activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c),
416.920(c).  If the claimant's impairment does not satisfy this severity threshold,
however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.
§§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to
severe impairments recognized by the Commissioner to be so severe as to preclude
a person from engaging in substantial gainful activity.  20 C.F.R. §§
404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

     The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

     On February 24, 2016, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging a disability

onset date of October 20, 2015.  Tr. 80, Tr. 246-63.  The applications were denied

initially and on reconsideration.  Tr. 134-42; Tr. 147-60.  Plaintiff appeared before

an administrative law judge (ALJ) on September 24, 2018.  Tr. 33-79.  On October

22, 2018, the ALJ denied Plaintiff's claim.  Tr. 12-32.

ORDER - 6

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through September 30, 2018, has not engaged in substantial gainful activity since October 20, 2015. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease, degenerative joint disease of the right hip, carpal tunnel syndrome, and right foot drop. Tr. 18.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18-19. The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] is limited to lifting, pushing and pulling up to 10 pounds frequently. [Plaintiff] can occasionally climb, stoop, kneel, crouch and crawl. He can also occasion[ly] reach overhead. [Plaintiff] can also perform work in which concentrated exposure to hazards is not present.

Tr. 19.

At step four, the ALJ found Plaintiff is capable of performing his past relevant work as a recreational facility manager and informal waiter. Tr. 23. In the alternative, at step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as sales clerk. Tr. 24. Therefore, the ALJ concluded Plaintiff

ORDER - 7

1   was not under a disability, as defined in the Social Security Act, from the alleged

2   onset date of October 20, 2015, through the date of the decision.  Tr. 25.

3        On September 4, 2019, the Appeals Council denied review of the ALJ's

4   decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for

5   purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

6                                    **ISSUES**

7        Plaintiff seeks judicial review of the Commissioner's final decision denying

8   him disability insurance benefits under Title II and supplemental security income

9   benefits under Title XVI of the Social Security Act.  Plaintiff raises the following

10  issues for review:

11       1.  Whether the ALJ properly evaluated the medical opinion evidence;

12       2.  Whether the ALJ conducted a proper step-three analysis; and

13       3.  Whether the ALJ properly evaluated Plaintiff's symptom claims.

14  ECF No. 14 at 2.

15                                 **DISCUSSION**

16  **A. Medical Opinion Evidence**

17       Plaintiff contends the ALJ erred in her analysis of the medical opinions of

18  Carol Flaugher, P.A., Joan Harding, M.D., Caryn Jackson, M.D., and Myrna

19  Palasi, M.D.  ECF No. 14 at 10-17.

20

ORDER - 8

1    There are three types of physicians: "(1) those who treat the claimant

2 (treating physicians); (2) those who examine but do not treat the claimant

3 (examining physicians); and (3) those who neither examine nor treat the claimant

4 [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

5 *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted).

6 Generally, a treating physician's opinion carries more weight than an examining

7 physician's, and an examining physician's opinion carries more weight than a

8 reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight

9 to opinions that are explained than to those that are not, and to the opinions of

10 specialists concerning matters relating to their specialty over that of

11 nonspecialists." *Id.* (citations omitted).

12    If a treating or examining physician's opinion is uncontradicted, the ALJ

13 may reject it only by offering "clear and convincing reasons that are supported by

14 substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

15 "However, the ALJ need not accept the opinion of any physician, including a

16 treating physician, if that opinion is brief, conclusory and inadequately supported

17 by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

18 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or

19 examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

20 may only reject it by providing specific and legitimate reasons that are supported

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)).  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

"Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. §§ 404.1513, 416.913 (2013).[2] However, an ALJ is required to consider evidence from non-acceptable medical sources, such as therapists.  20 C.F.R. §§ 404.1513(d), 416.913(d) (2013).[3]  An ALJ may reject the opinion of a non-acceptable medical source by giving reasons germane to the opinion.  *Ghanim*, 763 F.3d at 1161.

---

[2] The regulation that defines acceptable medical sources is found at 20 C.F.R. §§ 404.1502, 416.902 for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time the claim was filed.

[3] The regulation that requires an ALJ's consider opinions from non-acceptable medical sources is found at 20 C.F.R. §§ 404.1502c, 416.920c for claims filed after March 27, 2017.  The Court applies the regulation in effect at the time the claim was filed.

ORDER - 10

1        *1.  Ms. Flaugher*

2        On January 6, 2016, Carol Flaugher, a physician assistant, examined

3   Plaintiff and diagnosed him with lumbosacral strain, degenerative arthritis of the

4   spine, and intervertebral disc syndrome.  Tr. 579.  Ms. Flaugher opined Plaintiff

5   can sit for 30 minutes, he cannot jog, he is not limited in his ability to walk, he can

6   lift less than 20 pounds, and can stand for less than one hour.  Tr. 587.  As Ms.

7   Flaugher is not an acceptable medical source, the ALJ was required to give

8   germane reasons to reject Ms. Flaugher' opinion.  *See Ghanim*, 763 F.3d at 1161.

9   The ALJ did not address Ms. Flaugher's opinion.

10       Defendant concedes the ALJ erred by failing to assess Ms. Flaugher's

11  opinion, however, Defendant argues the error is harmless.  ECF No. 15 at 11.

12  Defendant contends the ALJ questioned the vocational expert at the hearing, who

13  stated the inclusion of a sit/stand option would not preclude Plaintiff's past work as

14  a facility manager, and as such, the error is harmless.  *Id.* at 11-12 (citing Tr. 77).

15  However, it is unclear if Ms. Flaugher's opinion is intended to indicate Plaintiff

16  cannot stand for more than an hour total or one-hour increments.  Moreover, the

17  form indicates that Plaintiff's sitting is limited to 30 minutes but also states if

18  Plaintiff drives he needs 30 minute stops; as such, her opinion as to Plaintiff's

19  ability to sit and need for breaks is unclear.  *See* Tr. 597.  While an ALJ's error is

20  harmless when it is "inconsequential to the ultimate nondisability decision,"

ORDER - 11

1  *Molina*, 674 F.3d at 1115, it is not clear here that the disregard of Ms. Flaugher's

2  opinion was harmless.  On remand, the ALJ is directed to consider Ms. Flaugher's

3  opinion and incorporate it into the RFC or give germane reasons to reject the

4  opinion.

5      *2.  Dr. Harding*

6      On January 19, 2016, Dr. Harding  examined Plaintiff and completed a

7  DSHS questionnaire assessing Plaintiff's functioning.  Tr. 473-77.  Dr. Harding

8  opined Plaintiff has moderate to marked limitations in his ability to stand, walk, sit,

9  carry, handle, push, pull, reach, stoop, and crouch, he is limited to sedentary work,

10 he should consider a surgical consultation, and his limitations are expected to last

11 24 months. Tr. 474-75.  Dr. Harding did not list any diagnoses on the DSHS form

12 she completed, but on the accompanying office visit record she assessed Plaintiff

13 with cervical radiculopathy, weakness of the right upper extremity, lumbar disc

14 disease with radiculopathy, and abdominal wall scarring.  Tr. 478.  As Dr.

15 Harding's opinion is contradicted by the opinion of Dr. James Irwin, Tr. 116-18,

16 the ALJ was required to give specific and legitimate reasons, supported by

17 substantial evidence, to reject the opinion.  *See Bayliss*, 427 F.3d at 1216.  The

18 ALJ noted Dr. Harding's conclusions, but did not discuss the weight she assigned

19 to the opinion.  Tr. 22.

20

ORDER - 12

1    In the RFC, the ALJ did not include Dr. Harding's opinion that Plaintiff is

2  limited to sedentary work.  While the ALJ summarized Dr. Harding's opinion, she

3  did not indicate the weight given to the opinion and gave no reasoning for rejecting

4  the opinion.  Tr. 22.  Defendant again concedes the ALJ erred in failing to address

5  Dr. Harding's opinion, but argues the error is harmless because the ALJ addressed

6  Dr. Palasi's opinion and the analysis of Dr. Palasi's opinion is legally sufficient to

7  also address Dr. Harding's opinion.  ECF No. 14 at 13.

8    Dr. Palasi reviewed records from Dr. Harding's examination and then

9  rendered her own opinion.  Tr. 920.  Dr. Palasi opined Plaintiff's impairments are

10  at a severity level of four to five, and opined he is limited to a less than sedentary

11  RFC.  *Id.*  The ALJ rejected Dr. Palasi's opinion because of the "extreme

12  limitations" that are inconsistent with the other evidence, and because Dr. Palasi

13  did not cite to evidence to support her opinion.  Tr. 22.  However, Dr. Harding's

14  opinion is less restrictive than Dr. Palasi's, as she opined Plaintiff is limited to

15  sedentary work, and the impairments are at a severity level of three to four.  Tr.

16  474-75.  As such, it is not clear that the ALJ would reject Dr. Harding's opinion as

17  "extreme" as Dr. Palasi's, or inconsistent with the evidence.  Additionally, Dr.

18  Harding's opinion was accompanied by an examination and more explanation for

19  her opinion than Dr. Palasi's opinion.  As such, the ALJ's analysis of Dr. Palasi's

20  opinion is inapplicable to Dr. Harding's opinion and thus does not render the error

ORDER - 13

harmless.  Further, the error cannot be considered harmless because Plaintiff was over the age of 50 and thus a sedentary RFC would render him disabled.  *See* 20 C.F.R. § 404, Appendix 2 to Subpart P., Grid Rule 201.14.  On remand, the ALJ is instructed to consider Dr. Harding's opinion and incorporate the limitations into the RFC or give specific and legitimate reasons, supported by substantial evidence, to reject the opinion.

### 3.  Dr. Palasi and Dr. Jackson

On February 22, 2018, examining provider Dr. Jackson examined Plaintiff and diagnosed him with cervical radiculopathy and lumbar disc disease with radiculopathy.  Tr. 1483.  She opined that Plaintiff is limited to sedentary work, his impairments cause marked to severe limitations, and the limitations would last 12 months.  Tr. 1483-84.

On February 5, 2016, reviewing provider Dr. Myrna Palasi diagnosed Plaintiff with cervical radiculopathy, lumbar spine degenerative disc disease with radiculopathy, sensorineural hearing loss, and hip degenerative joint disease.  Tr. 920.  She opined Plaintiff is limited by his chronic pain, and degenerative disc disease of the cervical spine and lumbar spine, he is capable of less than sedentary work, and rated his degenerative disc disease at a severity level of five and his sensorineural hearing loss at a severity level of four.  *Id.*  Dr. Jackson's sedentary opinion is consistent with Dr. Harding's opinion, and Dr. Palasi relied in part on

ORDER - 14

1   Dr. Harding's opinion in forming her own opinion.  As this case is being remanded

2   to reconsider Ms. Flaugher and Dr. Harding's opinions, the ALJ is also directed to

3   reconsider the opinions of Dr. Palasi and Dr. Jackson and incorporate the

4   limitations into the RFC or give specific and legitimate reasons, supported by

5   substantial evidence, to reject the opinions.

6   **B. Step-Three**

7        Plaintiff contends that the ALJ erred by finding that Plaintiff's spine

8   impairments did not meet or equal Listing 1.04A.  ECF No. 14 at 8-10.  At step

9   three, the ALJ must determine if a claimant's impairments meet or equal a listed

10  impairment.  20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii).  The Listing of

11  Impairments "describes each of the major body systems impairments [which are

12  considered] severe enough to prevent an individual from doing any gainful

13  activity, regardless of his or her age, education or work experience."  20 C.F.R. §§

14  416.925, 404.1525.  "Listed impairments are purposefully set at a high level of

15  severity because 'the listings were designed to operate as a presumption of

16  disability that makes further inquiry unnecessary.' "  *Kennedy v. Colvin*, 758 F.3d

17  1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)).

18  "Listed impairments set such strict standards because they automatically end the

19  five-step inquiry, before residual functional capacity is even considered."

20

ORDER - 15

*Kennedy*, 758 F.3d at 1176.  If a claimant meets the listed criteria for disability, he will be found to be disabled.  20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. §§ 416.925(d), 404.1525(d).  "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).  "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Tackett*, 180 F.3d at 1099.  However, " '[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three.' " *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

The claimant bears the burden of establishing his impairment (or combination of impairments) meets or equals the criteria of a listed impairments. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  "An adjudicator's

ORDER - 16

articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3."  Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found that Plaintiff's impairments and combinations of impairments did not meet or equal any listings, including Listing 1.04.  Tr. 18-19. Listing 1.04A requires the claimant have a spine disorder that has resulted in compromise of a nerve root (including the cauda equina) or the spinal cord, with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).  20 C.F.R. Part 404, Subpt. P, App. 1, Listing 1.04A.  The ALJ found Plaintiff does not meet Listing 1.04 because the evidence does not show Plaintiff has motor loss, spinal arachnoiditis, or lumbar stenosis.  Tr. 19.

Plaintiff has been diagnosed with multiple spinal conditions. Tr. 18, 20, 401. Plaintiff argues he meets Listing 1.04A because medical records show muscle weakness and atrophy in his upper extremities, denervation of the left C5 nerve root, sensory or reflex loss, reduced range of motion, positive straight leg raise test,

ORDER - 17

and lumbar radiculopathy with right L5 weakness.  ECF No. 14 at 9-10.  However, Listing 1.04A first requires the claimant have a spinal condition that compromises a nerve root or spinal cord, and that compression must be the cause of the resulting issues, such as motor loss.  20 C.F.R. Part 404, Subpt. P, App. 1, Listing 1.04A. As such, the lumbar spine evidence and cervical spine evidence are addressed separately.

Regarding Plaintiff's lumbar stenosis, an August 2014 MRI demonstrated multilevel degenerative changes with a disc bulge at L4-L5 that appeared to mildly displace the left L5 nerve.  Tr. 433.  Plaintiff reported associated right foot weakness.  *Id.*  In February 2015, Plaintiff had decreased strength in his right ankle, hamstrings and hip, abnormal reflexes in his right lower extremity, and testing demonstrated lumbar radiculopathy with significant weakness and axonal denervation in the right L5 distribution.  Tr. 461-63.  In February 2016 and February 2018, Plaintiff had a positive straight leg raise, Tr. 584, Tr. 1900, but in August 2016, Plaintiff had normal range of motion in the lumbar spine and a negative straight leg raise, Tr. 910.

Plaintiff argues the ALJ erred because she found Plaintiff does not have lumbar stenosis but noted later in the decision that Plaintiff has spinal stenosis of the lumbar spine.  ECF No. 14 at 9 (citing Tr. 20).  Plaintiff argues he meets Listing 1.04 because he has lumbar stenosis.  ECF No. 14 at 9.  However, to meet

ORDER - 18

Listing 1.04C, Plaintiff's lumbar stenosis would have to result in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.  20 C.F.R. Part 404, Subpt. P, App. 1, Listing 1.04C.  Plaintiff presents no argument as to how he meets Listing 1.04C beyond a diagnosis of lumbar stenosis and there is no evidence Plaintiff is unable to ambulate effectively.  As such, Plaintiff has not met his burden in demonstrating his lumbar stenosis meets Listing 1.04C.

Plaintiff has also been diagnosed with cervical stenosis and an April 2018 MRI demonstrated that the severe canal stenosis resulted in cord compression.  Tr. 971.  In February 2015, Plaintiff reported one year of ongoing numbness, pain, and decreased strength.  Tr. 461.  On examination, he had normal range of motion and sensation but visibly decreased bulk in his left bicep compared to the right, and decreased strength and reflexes.  *Id.*  In August 2016, Plaintiff reported pain, burning and numbness in his upper extremities, as well as weakness.  Tr. 909.  On examination, Plaintiff had decreased strength in his upper extremities, diminished sensation in the C5, C6 and C7 cervical distributions, abnormal reflexes, and limited range of motion in his neck with positive Spurling's.  Tr. 910.  Plaintiff's decreased strength in his upper extremities is demonstrated earlier in the record, such as in 2014 occupational therapy appointments.  Tr. 913, 918.

ORDER - 19

Defendant argues Plaintiff has presented no plausible theory that he meets Listing 1.04A because the cited evidence does not demonstrate that all of the criteria for Listing 1.04A were simultaneously present for at least 12 months.  ECF No. 15 at 18-19.  However, as discussed *supra,* the evidence demonstrates Plaintiff's symptoms spanned over two years, and while some of the findings appeared to have waxed and waned, all of the components of the listing were simultaneously noted at appointments where Plaintiff was evaluated for both his lumbar and cervical impairments.  Plaintiff has presented a plausible theory that his lumbar and cervical impairments meet Listing 1.04A.  Further, the ALJ's only discussion of Listing 1.04 was a finding Plaintiff does not have motor loss, which is inconsistent with the evidence discussed *supra,* and the case is being remanded for the ALJ to reconsider the medical opinion evidence.  As such, the ALJ erred in finding Plaintiff does not meet Listing 1.04 without properly evaluating the relevant evidence.  On remand, the ALJ is directed to reconsider the evidence and whether Plaintiff meets or equals a listing.  The ALJ is further directed to call a medical expert to assist in determining whether Plaintiff meets or equals a listing, and if so, the onset date of disability.

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 14 at 17-22.  An ALJ

ORDER - 20

1  engages in a two-step analysis to determine whether to discount a claimant's

2  testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

3  "First, the ALJ must determine whether there is objective medical evidence of an

4  underlying impairment which could reasonably be expected to produce the pain or

5  other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

6  "The claimant is not required to show that [the claimant's] impairment could

7  reasonably be expected to cause the severity of the symptom [the claimant] has

8  alleged; [the claimant] need only show that it could reasonably have caused some

9  degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

10      Second, "[i]f the claimant meets the first test and there is no evidence of

11  malingering, the ALJ can only reject the claimant's testimony about the severity of

12  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

13  rejection."  *Ghanim*, 763 F.3d at 1163 (citations omitted).  General findings are

14  insufficient; rather, the ALJ must identify what symptom claims are being

15  discounted and what evidence undermines these claims.  *Id*. (quoting *Lester*, 81

16  F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the

17  ALJ to sufficiently explain why it discounted claimant's symptom claims)).  "The

18  clear and convincing [evidence] standard is the most demanding required in Social

19  Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting

20  *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

ORDER - 21

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 416.929 (c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the evidence.  Tr. 20.

The ALJ's evaluation of Plaintiff's symptom claims and the resulting limitations relies significantly on the ALJ's assessment of the medical evidence.  Having determined a remand is necessary to readdress the medical source

ORDER - 22

1    opinions, any reevaluation must necessarily entail a reassessment of Plaintiff's

2    subjective symptom claims.  Thus, the Court need not reach this issue and on

3    remand the ALJ must also carefully reevaluate Plaintiff's symptom claims in the

4    context of the entire record.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir.

5    2012) ("Because we remand the case to the ALJ for the reasons stated, we decline

6    to reach [plaintiff's] alternative ground for remand.").

7    **D. Remedy**

8         Plaintiff urges this Court to remand for an immediate award of benefits.

9    ECF No. 14 at 10, 17, 21.

10        "The decision whether to remand a case for additional evidence, or simply to

11   award benefits is within the discretion of the court."  *Sprague v. Bowen*, 812 F.2d

12   1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

13   When the Court reverses an ALJ's decision for error, the Court "ordinarily must

14   remand to the agency for further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041,

15   1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

16   proper course, except in rare circumstances, is to remand to the agency for

17   additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

18   775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security

19   cases, the Ninth Circuit has "stated or implied that it would be an abuse of

20   discretion for a district court not to remand for an award of benefits" when three

1  conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted). Under the

2  credit-as-true rule, where (1) the record has been fully developed and further

3  administrative proceedings would serve no useful purpose; (2) the ALJ has failed

4  to provide legally sufficient reasons for rejecting evidence, whether claimant

5  testimony or medical opinion; and (3) if the improperly discredited evidence were

6  credited as true, the ALJ would be required to find the claimant disabled on

7  remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874

8  F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied,

9  the Court will not remand for immediate payment of benefits if "the record as a

10 whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759

11 F.3d at 1021.

12      Although Plaintiff urges remand for immediate benefits, the Court finds

13 further proceedings are necessary for the ALJ to reconsider the step-three analysis

14 with the assistance of a medical expert, as well as to reconsider the medical

15 evidence and Plaintiff's testimony and to resolve conflicts in the evidence. The

16 case is therefore remanded for further proceedings.

17                          **CONCLUSION**

18      Having reviewed the record and the ALJ's findings, the Court concludes the

19 ALJ's decision is not supported by substantial evidence and is not free of harmful

20 legal error. Accordingly, **IT IS HEREBY ORDERED**:

ORDER - 24

1      1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2      2. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

3      3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

4 REVERSING and REMANDING the matter to the Commissioner of Social

5 Security for further proceedings consistent with this recommendation pursuant to

6 sentence four of 42 U.S.C. § 405(g).

7      The District Court Executive is directed to file this Order, provide copies to

8 counsel, and **CLOSE THE FILE.**

9      DATED May 29, 2020.

10                     _s/Mary K. Dimke_
                         MARY K. DIMKE

11                UNITED STATES MAGISTRATE JUDGE

ORDER - 25